**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Robert Douglas Smith, | ) No. CV-87-234-TUC-JMR |
| Petitioner, | ) <u>DEATH PENALTY CASE</u> |
| v. | ) |
| Charles L. Ryan, et al., | ) **ORDER** |
| Respondents. | ) |

This case is on limited remand from the Ninth Circuit Court of Appeals, which directed this Court to hold "an evidentiary hearing on the question whether Smith has established cause and prejudice to overcome the procedural default of his sentencing ineffectiveness claim and such other matters as the court may deem appropriate." *Smith v. Schriro*, No. 96-99025 (9th Cir. Feb. 26, 2009). For the reasons set forth herein, the Court determines that Petitioner has failed to establish cause.

## BACKGROUND

The facts of the crimes committed by Petitioner and co-defendant Joe Lambright have been set forth in previous published opinions and will be repeated here only briefly. *See Lambright v. Stewart*, 191 F.3d 1181, 1182-83 (9th Cir. 1999) (en banc); *State v. Lambright*, 138 Ariz. 63, 66-67, 673 P.2d 1, 4-5 (1983).

In early 1980, Petitioner, Lambright, and Kathy Foreman stopped in Arizona on a cross-country trip from Texas to California. Foreman and Lambright were lovers; they

frequently engaged in sexual intercourse in Petitioner's presence. Petitioner complained about not having a woman, and Lambright said he would find someone for Petitioner. Lambright also said he wanted to kill somebody just to see if he could do it.

After driving around Tucson looking for hitchhikers, the trio picked up 29-year-old Sandy Kay Owen, who was looking for a ride to a food stamp office. Lambright drove to the office but after arriving jumped into the back seat with Owen and told her to "shut up and be quiet and she wouldn't get hurt." (Vol. 3 at 713.)[1] Owen was scared and trembling. Petitioner drove onto a highway toward California. At some point, they stopped to let Owen use the bathroom (after removing her shoes to prevent her from running away in the desert), and Lambright took over driving. According to Foreman, Petitioner then covered the windows and had sex with Owen in the back seat. The group later exited the highway and proceeded on a dirt road to a mountainous area. After parking at the end of the road, they hiked up to a ledge where Lambright and Foreman had sex and Petitioner again had sex with Owen.

Afterward, Petitioner began choking Owen. Lambright went over and stabbed her in the chest with Foreman's knife. Owen collapsed to the ground, and Petitioner and Foreman held down her arms as Lambright continued to stab. Petitioner then grabbed her head and tried to break her neck. That effort having failed, Lambright sawed at Owen's neck with the knife and then hit her head with a large rock while yelling, "Die, bitch." (*Id.* at 723.) After covering the body with rocks and driving away, Petitioner asked Foreman to play the song "We are the Champions" by Queen. According to Foreman, Petitioner and Lambright smiled and laughed as they recounted how the victim's head had bounced when Lambright hit her with the rock.

About a year later, law enforcement received a tip about the crime. Petitioner, Lambright, and Foreman were detained and made incriminating statements. Petitioner

---

[1] "Vol." refers to twelve volumes of sequentially-numbered state court records filed by Respondents. (*See* Dkt. 229.)

- 2 -

confessed to abducting Owen and taking her out to the desert to have sex. He claimed Owen said she would do anything with them so long as she was not hurt. He further claimed they talked about knocking Owen out to give them time to get away and that he was going to make her pass out by squeezing her jugular vein. However, Lambright decided "we can't let her live now." (Evid. Hr'g Ex. 21 at 2076.)

Petitioner and Lambright were tried together but before separate juries; Foreman testified against them in exchange for immunity from prosecution. Both were convicted of first degree murder, kidnapping, and sexual assault, and sentenced to death by Pima County Superior Court Judge Michael J. Brown. Petitioner's sentence was based on the trial court's determination that the murder had been committed in an especially cruel, heinous, or depraved manner and that Petitioner had failed to establish mitigating circumstances sufficiently substantial to call for leniency.[2]

At his 1982 trial, Petitioner was represented by Assistant Pima County Public Defender (PCPD) Thomas Hippert. Assistant PCPD Lawrence Fleischman represented Petitioner on appeal. After the Arizona Supreme Court affirmed, *State v. Smith*, 138 Ariz. 79, 673 P.2d 17 (1983), Fleischman filed a petition for post-conviction relief (PCR). Pursuant to Rule 32 of the Arizona Rules of Criminal Procedure, this petition was filed with the trial court, which denied relief in 1985. The next year, the Arizona Supreme Court denied a discretionary petition for review.

In 1987, Assistant PCPD John Palumbo initiated this federal habeas proceeding. In response to Respondents' motion to dismiss for failure to exhaust all claims, the Court stayed federal proceedings and Palumbo filed a second state PCR petition on Petitioner's behalf in

---

[2] At the time of Petitioner's trial, Arizona law required trial judges to determine the existence of aggravating factors rendering a defendant eligible for capital punishment. The Supreme Court invalidated this aspect of Arizona's capital sentencing scheme in *Ring v. Arizona*, 536 U.S. 584 (2002). However, *Ring* does not apply retroactively to cases such as Petitioner's that were final at the time it was decided. *Schriro v. Summerlin*, 542 U.S. 348, 358 (2004).

1989. The trial court dismissed the petition as procedurally barred, and in 1993 the Arizona Supreme Court summarily denied review. This Court then lifted its stay and directed the filing of an amended petition.

In 1994, while briefing on his habeas claims was in progress, Petitioner sent a letter to United States District Court Judge Richard M. Bilby (who at that time presided over this matter) expressing his desire to raise ineffectiveness claims against his PCPD attorneys. (Dkt. 69.) Because the Pima County Public Defender's Office had represented Petitioner throughout his state and federal proceedings, District Judge Bilby concluded this was an issue the Arizona courts should decide and directed Petitioner to return to state court to file a third PCR petition.

The state court appointed as counsel Jonathan Young, who filed a petition raising numerous ineffectiveness claims. The court later dismissed the claims as precluded under Rule 32.2(a)(3) because they could have been raised on appeal or in a previous PCR petition, and denied a motion for reconsideration. The Arizona Supreme Court summarily denied review in 1996.

Habeas counsel Palumbo then moved in this Court for the appointment of Young as second counsel to supplement the pending federal habeas petition with the newly-exhausted ineffectiveness claims. In his motion, Palumbo stated that he was "legally and ethically prohibited from representing" Petitioner on ineffectiveness allegations against members of his office. District Judge Bilby granted the motion, and Young filed a supplemental habeas petition raising the new claims, the most significant being that trial counsel Hippert had failed to investigate and present at sentencing evidence of Petitioner's mental condition and other mitigating factors.

In late 1996, District Judge Bilby denied habeas relief, rejecting Petitioner's claims as either meritless or procedurally barred. (Dkts. 128, 133.) On appeal, the Ninth Circuit reversed as to Petitioner's convictions, finding that the use of dual juries had violated both defendants' constitutional rights. *Lambright v. Stewart*, 167 F.3d 477 (9th Cir. 1999). An

en banc panel of the circuit reversed. *Lambright v. Stewart*, 191 F.3d 1181 (9th Cir. 1999) (en banc). On remand, the three-judge panel affirmed Petitioner's convictions but found that the state court's procedural bar of his sentencing ineffectiveness claim did not rest on independent state law grounds. *Smith v. Stewart*, 241 F.3d 1191 (9th Cir. 2001). This decision was reversed by the United States Supreme Court in *Stewart v. Smith*, 536 U.S. 856 (2002) (per curiam), following the Arizona Supreme Court's response to a certified question in *Stewart v. Smith*, 202 Ariz. 446, 46 P.3d 1067 (2002), concerning the operation of Rule 32's preclusion provisions. Although it found Petitioner's sentencing ineffectiveness claim procedurally defaulted, the United States Supreme Court "voice[d] no opinion on whether [Smith] has provided valid cause to overcome his procedural default in state court." 536 U.S. at 861.

After additional briefing on remand, the Ninth Circuit ordered suspension of Petitioner's federal habeas appeal and remanded to the state court for a jury trial on whether Petitioner was mentally retarded and therefore ineligible for the death penalty under *Atkins v. Virginia*, 536 U.S. 304 (2002). *Smith v. Schriro*, No. 96-99025 (9th Cir. Aug. 10, 2004). On certiorari, the Supreme Court reversed the jury trial requirement, *Schriro v. Smith*, 546 U.S. 6 (2005) (per curiam), and the circuit panel entered a new order directing the state court to determine mental retardation by whichever method the state had adopted to make such determinations, *Smith v. Schriro*, No. 96-99025 (9th Cir. Dec. 12, 2005).

After extensive discovery and an evidentiary hearing, Pima County Superior Court Judge Jan Kearney ruled in March 2008 that Petitioner had failed to meet his burden of establishing mental retardation under A.R.S. § 13-703.02. The Arizona Court of Appeals affirmed in an unpublished memorandum decision, *Smith v. Kearney*, No. 2CA-SA-2008-0019, 2008 WL 2721155 (Ariz. App. Jul. 11, 2008), and the Arizona Supreme Court summarily denied review. Thereafter, the Ninth Circuit remanded the matter to this Court for an evidentiary hearing on whether Petitioner has cause and prejudice to overcome the procedural default of his sentencing ineffectiveness claim. *Smith v. Schriro*, No. 96-99025

(9th Cir. Feb. 26, 2009.) The parties engaged in discovery and filed supplemental briefs, and the Court held a hearing on May 5, 2010.

At the hearing, Petitioner called only one witness with regard to the cause issue: Fred Dardis, the Pima County Public Defender from 1981 to 1986. His testimony is discussed below.

With respect to prejudice, Petitioner proffered all of the extensive materials that were developed during the state court *Atkins* proceedings and called as his only live witness Dr. Debra Stibick, a neuropsychologist retained following the conclusion of the *Atkins* litigation, to establish that counsel's investigation and presentation of mitigating evidence was both deficient and prejudicial. Dr. Stibick opined that Petitioner was not mentally retarded but suffers from autism, which "seriously impaired . . . his ability to function independently and make appropriate decisions on his own." (Dkt. 217 at 18.) In her view, Petitioner's understanding of the "situation" with the victim was inaccurate due to his autistic disorder:

> The reason Mr. Smith had sex with Ms. Owens despite her distress was because he was blind to those non-verbal cues. It has been testified that she agreed to do whatever they wanted as long as they didn't hurt her. He took that as consent, as her having sex willingly. She didn't say "no". . . .
>
> When he "choked" Ms. Owens, he used the same technique he had used multiple times as he learned in childhood during the "choking game." He obviously survived when he made himself pass out using the technique taught to him in childhood. Mr. Smith had no intention of choking Ms. Owens to death, but to put her to sleep. His behavioral patterns show he draws upon previous behaviors of others. When Mr. Lambright stabbed Ms. Owens, he did not know what to do and he became overwhelmed and cognitively shut down. He was viewing Ms. Owens as his new girlfriend.

(*Id.* at 16-18.)

**DISCUSSION**

**I.    Procedural Default Finding**

Petitioner contends in post-remand briefing that his sentencing ineffectiveness claim is not procedurally defaulted. (Dkt. 199 at 2-15.) He makes the following arguments: (1) Arizona law has never required that ineffectiveness claims be raised on direct appeal or be forever waived; (2) Petitioner did not raise any ineffectiveness claims in his first PCR

petition that could have preclusive effect on future such claims;[3] (3) Arizona law does not preclude ineffectiveness claims in a successive PCR petition when the petitioner is represented for the first time by different counsel; (4) the pre-1992 version of Rule 32.2(a)(3) required a "knowing, voluntary and intelligent waiver of issues" before claims could be found precluded and there is no evidence Petitioner knowingly, voluntarily, and intelligently waived his sentencing ineffectiveness claim; (5) the post-1992 version of Rule 32.2 requires ineffectiveness claims to be examined for prejudice before being deemed precluded, thereby rendering any preclusion ruling interwoven with federal constitutional law; (6) the Ninth Circuit previously found that the PCR court did not clearly and unambiguously invoke a state procedural bar, and this finding was not part of the certiorari petition granted by the United States Supreme Court; and (7) Arizona lacks an effective state corrective process for ineffectiveness claims because they are limited to a forum (PCR proceedings) in which petitioners are not entitled to effective representation. (*Id.*)

**Law of the Case**

Under the "law of the case" doctrine, a decision of an appellate court on a legal issue "must be followed in all subsequent proceedings in the same case." *Jeffries v. Wood*, 114 F.3d 1484, 1489 (9th Cir.) (en banc), *overruled on other grounds by Lindh v. Murphy*, 521 U.S. 320 (1997). Exceptions to this rule exist where "(1) the decision is clearly erroneous and its enforcement would work a manifest injustice, (2) intervening controlling authority makes reconsideration appropriate, or (3) substantially different evidence was adduced at a subsequent trial." *Minidoka Irrigation Dist. v. Dep't of Interior*, 406 F.3d 567, 573 (9th Cir. 2005). Petitioner does not address the law of the case doctrine or assert that any of its exceptions are applicable. Nonetheless, the Court has considered his arguments in light of the exceptions and concludes that none apply.

In 1996, this Court determined that the PCR court had found Petitioner's

---

[3] Respondents have not made this contention on remand, and Petitioner acknowledged during closing argument that this argument is no longer relevant.

ineffectiveness claims precluded as a matter of state procedural law. (Dkt. 133 at 3.) On appeal, the Ninth Circuit acknowledged that the state court had found the claim defaulted and that Arizona's procedural default rule is regularly applied, but disagreed that the state court's ruling was independent of federal law. *Smith*, 241 F.3d at 1195-96 & n.2. On certiorari, the United States Supreme Court also observed that Petitioner's claim had been procedurally defaulted in state court and further found that this default rested on adequate *and* independent state grounds. *Smith*, 536 U.S. at 857 (stating that claim was waived under Arizona's Rule 32.2(a)(3) because Petitioner had failed to raise it in two previous PCR petitions).

Petitioner now raises numerous new arguments challenging the adequacy and independence of the state court's procedural ruling. However, he does not explain why these arguments were not raised earlier or why they should be heard at this juncture. The Court finds that Petitioner has waived the arguments and that it would work a substantial inequity to allow them to be considered at this late date. *See Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991). Moreover, none of Petitioner's new arguments establish that the procedural default finding is clearly erroneous, and Petitioner does not cite intervening controlling authority calling into question the adequacy or independence of Rule 32.2(a)(3). *Cf. Sechrest v. Ignacio*, 549 F.3d 789, 802-03 (9th Cir. 2008) (revisiting procedural default ruling in light of intervening en banc opinion finding Nevada's preclusion rule inadequate to bar federal habeas review). Thus, the law of the case precludes this Court from revisiting the determination that Petitioner procedurally defaulted his ineffectiveness claim. Even were the Court to consider Petitioner's new arguments, none are persuasive.

**New Arguments**

First, Petitioner argues that Arizona law never required that ineffectiveness claims be raised on direct appeal. The premise of this argument is inaccurate. The trial court's ruling on Petitioner's third PCR stated only that the claims were precluded "by failure to bring them previously, in accordance with Rule 32.2(a)." (Evid. Hr'g Ex. 42 at 68.) At the time of the third PCR petition, Rule 32.2(a)(3) provided that relief is precluded on any ground that "has

ineffectiveness claims precluded as a matter of state procedural law. (Dkt. 133 at 3.) On appeal, the Ninth Circuit acknowledged that the state court had found the claim defaulted and that Arizona's procedural default rule is regularly applied, but disagreed that the state court's ruling was independent of federal law. *Smith*, 241 F.3d at 1195-96 & n.2. On certiorari, the United States Supreme Court also observed that Petitioner's claim had been procedurally defaulted in state court and further found that this default rested on adequate *and* independent state grounds. *Smith*, 536 U.S. at 857 (stating that claim was waived under Arizona's Rule 32.2(a)(3) because Petitioner had failed to raise it in two previous PCR petitions).

Petitioner now raises numerous new arguments challenging the adequacy and independence of the state court's procedural ruling. However, he does not explain why these arguments were not raised earlier or why they should be heard at this juncture. The Court finds that Petitioner has waived the arguments and that it would work a substantial inequity to allow them to be considered at this late date. *See Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991). Moreover, none of Petitioner's new arguments establish that the procedural default finding is clearly erroneous, and Petitioner does not cite intervening controlling authority calling into question the adequacy or independence of Rule 32.2(a)(3). *Cf. Sechrest v. Ignacio*, 549 F.3d 789, 802-03 (9th Cir. 2008) (revisiting procedural default ruling in light of intervening en banc opinion finding Nevada's preclusion rule inadequate to bar federal habeas review). Thus, the law of the case precludes this Court from revisiting the determination that Petitioner procedurally defaulted his ineffectiveness claim. Even were the Court to consider Petitioner's new arguments, none are persuasive.

**New Arguments**

First, Petitioner argues that Arizona law never required that ineffectiveness claims be raised on direct appeal. The premise of this argument is inaccurate. The trial court's ruling on Petitioner's third PCR stated only that the claims were precluded "by failure to bring them previously, in accordance with Rule 32.2(a)." (Evid. Hr'g Ex. 42 at 68.) At the time of the third PCR petition, Rule 32.2(a)(3) provided that relief is precluded on any ground that "has

been waived at trial, on appeal, *or* in any previous collateral proceeding." Ariz. R. Crim. P. 32.2(a)(3) (West Supp. 1995) (emphasis added). Thus, the trial court's ruling was based on the fact that Petitioner neglected to raise any ineffectiveness claims either on appeal or in his first or second PCR petitions.

Second, Petitioner argues that Arizona law does not preclude ineffectiveness claims in a successive PCR petition when the petitioner is represented for the first time by different counsel. In support, he cites *State v. Bennett*, 213 Ariz. 562, 146 P.3d 63 (2006). In Bennett's case, appellate counsel successfully moved to stay the direct appeal and permit the filing of a PCR petition. Thereafter, the appeals court consolidated the direct appeal with a petition for review from the denial of PCR relief. Subsequently, Bennett filed a second PCR petition arguing that her attorney's representation on appeal had been constitutionally ineffective. The lower courts dismissed, finding the claim precluded. In reversing, the Arizona Supreme Court first acknowledged the general rule that when "ineffective assistance of counsel claims are raised, or could have been raised, *in a Rule 32 post-conviction relief proceeding*, subsequent claims of ineffective assistance will be deemed waived and precluded." *Id.* at 566, 146 P.3d at 67 (quoting with emphasis *State v. Spreitz*, 202 Ariz. 1, 2, 39 P.3d 525, 526 (2002)). It then concluded, however, that Bennett's claim was not precluded because appellate counsel could not have raised his own ineffectiveness in the simultaneously-filed first PCR petition and because the second PCR proceeding (in which she was represented by different counsel) was the first proceeding in which she could raise the appellate ineffectiveness claim. *Id.*

The Court acknowledges that *Bennett* appears to announce a new exception to Arizona's rule of preclusion for ineffectiveness claims, suggesting there is no clear bar to raising such claims in a successive PCR petition if a petitioner was represented by the same attorney (or office) on appeal and in a first PCR petition. However, *Bennett* was decided in 2006, more than ten years after the PCR court ruled on the third PCR petition in this case. Petitioner can point to no state rule or law prior to *Bennett* that indicated such an exception

existed. Moreover, *Bennett* involved the unique circumstance of one attorney's representation in *simultaneous* appeal and PCR proceedings. Because the appeal was stayed during the pendency of the first PCR petition, the appellate ineffectiveness ground was not yet cognizable when the first PCR petition was filed. Here, Petitioner's first PCR petition was filed after the conclusion of his direct appeal, and he also filed a second PCR petition before eventually requesting change of counsel to pursue ineffectiveness claims.

Third, Petitioner asserts that the state court erroneously applied the post-1992 version of Rule 32.2(a)(3) rather than the pre-1992 version, which required a "knowing, voluntary and intelligent waiver of issues" before claims could be found precluded, and argues there is no evidence he knowingly, voluntarily, and intelligently waived his sentencing ineffectiveness claim. The Court disagrees. First, the 1992 changes to Arizona's Rule 32 expressly apply "to all post-conviction relief petitions filed on or after September 30, 1992, except that the time limits of 90 and 30 days imposed by Rule 32.4 shall be inapplicable to a defendant sentenced prior to September 30, 1992 who is filing his first petition for post-conviction relief." 171 Ariz. XLIV (Sep. 24, 1992) (Order Amending *Nunc Pro Tunc* a Previous Order of this Court Amending Rule 32, Arizona Rules of Criminal Procedure). Thus, the state court applied the correct version of Rule 32 then in effect when Petitioner filed his third PCR petition on June 9, 1995. Second, even under the pre-1992 rule, a state court was permitted to infer a knowing, voluntary, and intentional waiver from the "failure to raise any ground then available to him in a previous Rule 32 proceeding in which he was represented by counsel." Ariz. R. Crim. P. 32.2(c) (West 1973). Thus, there was no material change in the rule from the time of Petitioner's conviction to the filing of his third PCR petition – both the pre- and post-1992 rule required that grounds for relief be raised at the earliest available opportunity or risk being found waived.

Fourth, Petitioner argues that the state court's preclusion ruling was not "independent" of federal law because a comment to the 1995 version of the rule recognized ineffectiveness claims as an exception to preclusion and required that such claims be examined for prejudice.

Therefore, according to Petitioner, the state court necessarily considered the merits of his claims in determining they were precluded.

The comment at issue reads:

> The pre-1992 version of Rule 32.2(a)(3) indicated that a defendant must "knowingly, voluntarily and intelligently" not raise an issue at trial, on appeal, or in a previous collateral proceeding before the issue was precluded. See, Faye v. Noya [sic], 372 U.S. 391 (1963). While that is the correct standard of waiver for some constitutional rights, it is not the correct standard for other trial errors. Accordingly, some issues not raised at trial, on appeal, or in a previous collateral proceeding may be deemed waived without considering the defendant's personal knowledge, unless such knowledge is specifically required to waive the constitutional right involved. If an asserted claim is of sufficient constitutional magnitude, the state must show that the defendant "knowingly, voluntarily and intelligently" waived the claim. For most claims of trial error, the state may simply show that the defendant did not raise the error at trial, on appeal, or in a previous collateral proceeding, and that would be sufficient to show that the defendant has waived the claim. *If defense counsel's failure to raise an issue at trial, on appeal or in a previous collateral proceeding[] is so egregious as to result in prejudice as that term has been constitutionally defined, such failure may be raised by means of a claim of ineffective assistance of counsel.*

Ariz. R. Crim. P. 32.2 cmt. (West Supp. 1995) (emphasis added). Petitioner acknowledges that a similar argument with respect to the comment's "sufficient constitutional magnitude" language was rejected by the United States Supreme Court in his case, but states that his new argument is based on the part of the comment emphasized above. He further asserts that in his third PCR petition he raised a claim that post-conviction counsel had been ineffective for failing to raise a sentencing ineffectiveness claim. Thus, according to Petitioner, when the state court dismissed this allegation, it must have necessarily considered the merits of the sentencing ineffectiveness claim in determining whether PCR counsel's failure to raise that claim was "so egregious as to result in prejudice." The Court disagrees and declines to construe the state court's rejection of Petitioner's post-conviction ineffectiveness claim as a ruling on the merits of his sentencing ineffectiveness claim. Such a reading would undermine the state court's clear intention to bar merits review of ineffectiveness claims not raised in accordance with its procedural rules.

Fifth, Petitioner points to the Ninth Circuit's prior opinion in which it observed that the PCR court's ruling on his third petition did not clearly invoke a procedural bar because

- 11 -

1 the state court implied that the record failed to demonstrate that Petitioner had a colorable ineffectiveness claim. *See Smith*, 241 F.3d at 1196-97. Petitioner asserts this finding was left undisturbed by the Supreme Court's subsequent reversal, and thus there is no adequate procedural bar. He is incorrect. The Supreme Court expressly disapproved this aspect of the circuit court's opinion, finding that the state court's reference to "colorable claim" was "only as a rhetorical device for emphasizing the lack of any conflict of interest that might excuse [Petitioner's] waiver." *Smith*, 536 U.S. at 861. As the Supreme Court stated, "The Ninth Circuit interpreted the state court's order rejecting respondent's ineffective-assistance-of-trial-counsel claim as possibly resting on a ruling on the merits of the claim. The record, however, reveals no such ruling." *Id.* at 860. Thus, this contention is meritless.

Finally, Petitioner cites no relevant authority to support his contention that Arizona lacks an effective state corrective process for ineffectiveness claims as required for exhaustion by 28 U.S.C. § 2252(b)(1)(B).

## II. Cause to Excuse Default

A federal court generally will not review the merits of a procedurally defaulted claim unless the petitioner demonstrates legitimate cause for the failure to properly exhaust the claim in state court and prejudice from the alleged constitutional violation. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Ordinarily "cause" to excuse a default exists if a petitioner can demonstrate that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Id.* at 753. Objective factors constituting cause include interference by officials which makes compliance with the state's procedural rule impracticable, a showing that the factual or legal basis for a claim was not reasonably available to counsel, and constitutionally ineffective assistance of counsel. *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *King v. Lamarque*, 455 F.3d 1040, 1045 (9th Cir. 2006).

Ineffective assistance of counsel can establish cause to excuse a procedural default only when it rises to the level of an independent constitutional violation. *Coleman*, 501 U.S.

at 755. Because there is no constitutional right to the effective assistance of counsel in state postconviction proceedings, *see Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *Murray v. Giarratano*, 492 U.S. 1, 7-12 (1989), a claim of ineffectiveness by PCR counsel cannot establish cause for a procedural default. *See Cook v. Schriro*, 538 F.3d 1000, 1027-28 (9th Cir. 2008). Notwithstanding Petitioner's arguments to the contrary, this is true even if the state PCR proceeding is a petitioner's only opportunity to assert claims of ineffective assistance of counsel. *See Ellis v. Armenakis*, 222 F.3d 627, 633 (9th Cir. 2000); *Jeffers v. Lewis*, 68 F.3d 299, 300 (9th Cir. 1995) (en banc) (plurality) (ruling an Arizona petitioner had "no Sixth Amendment right to counsel during his state habeas proceedings even if that was the first forum in which he could challenge constitutional effectiveness on the part of trial counsel"); *Bonin v. Vasquez*, 999 F.2d 425, 428 (9th Cir. 1993) (*Bonin I*).

In his 1996 habeas petition supplement, Petitioner asserted that deputies of the Pima County Public Defender were unable to raise ineffectiveness claims against their own office and that this conflict of interest constituted cause to excuse the default of his ineffectiveness claims. (Dkt. 124 at 20-21.) He first made this argument in state court in support of his third PCR petition, to which he appended an affidavit from then-habeas counsel Palumbo avowing that he was "of the legal opinion that I was prohibited under Arizona law from raising any ineffective assistance claims on Smith's behalf, since Smith has been continuously represented by a Public Defender attorney, and counsel cannot raise his own ineffectiveness, or the ineffectiveness of any member of his office." (Evid. Hr'g Ex. 42 at 65.)

The PCR court rejected this assertion:

> The suggestion that Lawrence Fleischman (now Judge Fleischman) or John Palumbo of the Public Defender's office failed to consider the issue of ineffective assistance of counsel or considered it, thought counsel was ineffective and failed to allege same to avoid embarrassing a professional colleague in violation of their ethical duties is outrageous.

(*Id.* at 67-68.) The PCR court elaborated in an order denying reconsideration:

> Counsel's assertion on page 4, lines 3 through 6 of his Motion for Rehearing, that "each of the deputies of the Public Defender's Office have been appointed . . . to 'conduct the affairs' of the Pima County Public Defender's Office rather than to independently represent Mr. Smith" is either

- 13 -

> outrageous or ridiculous, whichever adjective is most appropriate. Deputies in the Public Defender's Office do not represent the Public Defender's Office. They are attorneys for and have an attorney-client relationship with the actual defendant charged with the crime. It may, indeed, be correct that it would be inappropriate for a public defender to allege a different public defender was ineffective at trial (although it has been done by this Public Defender's Office in the past). However, this does not absolve an attorney representing a client in an appellate matter from examining in detail whether or not there is a colorable claim for ineffective assistance of counsel. That is an absolute and undelegable duty. Failure to do so is at the very best malpractice and malfeasance. An attorney who discovers a colorable claim of ineffective assistance of counsel must immediately withdraw, notify the Court that there is such a claim, and allow the Court to appoint an attorney who has no conflict in representing that client. To suggest that one could wait for ten years, from 1985 to the present, and never even examine the case to see if the client had such a claim is an admission of the grossest malpractice.

(*Id.* at 69-70 (alteration in original).)

In his supplemental brief following remand from the Ninth Circuit, Petitioner again argues that the public defender's serial representation constitutes cause. (Dkt. 199 at 15.) He asserts that the PCPD's Office "was conscientiously avoiding raising an IAC claim against itself in the appellate and Rule 32 proceedings" and that this policy was an objective external factor that interfered with his ability to properly exhaust the claim. (*Id.* at 16.)

In its order remanding the case for an evidentiary hearing on cause and prejudice, the Ninth Circuit directed this Court to determine "whether an official policy prevented the public defender from challenging the conduct of a staff member." *Smith v. Schriro*, No. 96-99025 (9th Cir. Feb. 26, 2009). At the hearing, Fred Dardis, the Pima County Public Defender at the time of Petitioner's trial, appeal, and first PCR proceeding testified that there was no official office policy governing the raising of ineffectiveness claims against deputy public defenders. Rather, it was expected that an attorney would move to withdraw if the client or any assigned attorney had concerns about the effectiveness of representation provided by a member of the office. Petitioner presented no further evidence on this issue. Petitioner himself was present at the hearing but did not testify, and Petitioner did not call either Fleischman or Palumbo as witnesses. Thus, there is no evidence that Petitioner asked Fleischman or Palumbo to raise ineffectiveness claims in his first or second PCR petitions or was told by these attorneys that he had colorable ineffectiveness claims that could not be

raised because of an office policy or conflict of interest.

After consideration of the evidence, the PCR court's ruling, and the controlling state law at the time, this Court concludes that the mere fact the same public defender's office represented Petitioner at trial, on appeal, and in his first two PCR proceedings does not establish cause for the default of his sentencing ineffectiveness claim. This conclusion is mandated by several Ninth Circuit cases in which the court found no cause for the default of ineffectiveness claims where the same allegedly ineffective attorney represented the petitioner in post-conviction proceedings.

In *Bonin v. Calderon*, the court determined that an appellate ineffectiveness claim was defaulted for not being raised in the petitioner's first habeas proceeding, even though the same lawyer had represented Bonin in both proceedings, because there was no constitutional right to counsel in the habeas proceeding, even if that was the first opportunity to raise the claim. 77 F.3d 1155, 1159 (9th Cir. 1996) (*Bonin III*). "[C]ounsel's failure to raise the issue of his own ineffectiveness on appeal did not violate Bonin's rights under the Sixth Amendment." *Id.*

This holding was reaffirmed in *Moran v. McDaniel*, 80 F.3d 1261 (9th Cir. 1996). There, the petitioner was represented by the same attorney for direct appeal and his initial state and federal post-conviction proceedings. As cause to excuse the default of an appellate ineffectiveness claim, the petitioner argued that a conflict of interest existed which precluded counsel from asserting in the first PCR proceeding his own ineffectiveness on direct appeal. *Id.* at 1271. The court disagreed:

> In essence, Moran is arguing that he was deprived of effective assistance of counsel during his habeas proceedings because his counsel was not able to litigate his own alleged ineffectiveness. A petitioner is entitled to due process during the habeas proceedings. *Bonin I*, 999 F.2d at 428-29. However, the "absence or ineffectiveness of counsel does not in and of itself constitute a due process violation." *Id.* at 429. Moran may not avoid our holding that a petitioner is not entitled to effective assistance of counsel during habeas proceedings by alleging a due process, rather than a Sixth Amendment, violation. *Id.* Accordingly, we reject this argument.

80 F.3d at 1271.

In *Nevius v. Sumner*, 105 F.3d 453 (9th Cir. 1996), the petitioner argued that the district court had authority to consider a second federal habeas petition because the first one had been filed by attorneys who "were incapable of acting as his agents by reason of the conflict that precluded them from asserting their own ineffectiveness at trial and on appeal." *Id.* at 459. He further argued that his attorneys were without authority to default any of his substantive claims, "particularly in light of their conflict of interest." Again, the Ninth Circuit disagreed:

> Nevius' first proposition – that an attorney is not authorized to default a client's claim – is refuted by *Coleman v. Thompson*. *Coleman* held that an attorney's failure to appeal a state trial court's ruling, in collateral proceedings, rejecting an ineffective assistance claim defaulted that claim for purposes of federal review. The attorney's error was not "cause" to excuse the default, because it occurred in proceedings in which the defendant had no constitutional right of counsel. Nevius' counsel also defaulted in collateral proceedings in which there is no constitutional right to counsel.

*Id.* (citations omitted). The court further observed that although Nevius was represented at trial and in his first state and federal collateral proceedings by the same attorney, who was ethically incapable of raising his own ineffectiveness, the decisions in *Bonin III* and *Moran* foreclosed relief.

Finally, in *Ortiz v. Stewart*, a capital case from Arizona, the court rejected the same conflict-of-interest-as-cause argument raised here:

> The district court did not review the merits of Ortiz's claim of ineffective assistance of counsel on appeal because the state court found that the claim was procedurally barred by Arizona Rule of Criminal Procedure 32.2(a)(3). Ortiz argues that because the same attorney represented him on appeal and during his first state post-conviction proceeding his procedural default with respect to the ineffective assistance on appeal claim should be excused for cause. *See Bonin*, 77 F.3d at 1158 (procedural bar is lifted if petitioner can show cause and actual prejudice). Ortiz insists that his attorney was prevented from raising his own ineffectiveness due to a clear conflict of interest. This precise argument has been repeatedly rejected by this circuit. *See Nevius v. Sumner*, 105 F.3d 453, 460 (9th Cir. 1996); *Bonin*, 77 F.3d at 1159.

149 F.3d 923, 933 (9th Cir. 1998).

Despite the striking similarity of these cases to his own, Petitioner argues they are not controlling and that his case is more akin to *Manning v. Foster*, 224 F.3d 1129 (9th Cir.

2000). The Court disagrees.

In *Manning*, the petitioner's trial attorney missed the direct appeal filing deadline and then misled the petitioner as to his post-conviction-relief options. As a result of counsel's actions, Manning never filed a state PCR petition in which he could have challenged counsel's appellate ineffectiveness. The Ninth Circuit distinguished *Bonin III*, *Moran*, and *Nevius* as based on ineffective assistance of PCR counsel and concluded that a conflict of interest independent of an ineffectiveness claim could constitute cause if the conflict "caused the attorney to interfere with the petitioner's right to pursue his habeas claim." *Id.* at 1134. The court further observed that "there was a clear conflict between Manning's interest in presenting and prevailing in his ineffective assistance claim and [trial counsel's] interest in protecting himself from the damage such an outcome would do to his professional reputation and from exposure to potential malpractice liability or bar discipline." *Id.* It therefore remanded for a hearing to determine whether counsel's actions had "effectively prevented Manning from learning of and vindicating his right to petition for state post-conviction relief." *Id.* at 1135.

Here, in contrast, Petitioner was not precluded from filing a PCR petition. Indeed, attorneys from the Pima County Public Defender's Office filed two. Nor has Petitioner presented any evidence, such as an affidavit from Fleischman, indicating that Petitioner was affirmatively misled about his PCR options or that counsel intentionally interfered with his access to post-conviction relief in order to protect fellow public defender Hippert from any damage that might result from a successful ineffectiveness claim.

At the time of Petitioner's first PCR petition, Arizona law required that "[i]f counsel honestly believes he was ineffective at trial or that such issue exists, he should so advise his client, seek leave to withdraw and have new counsel appointed to raise the issue on appeal, or pursue the matter under Rule 32, Arizona Rules of Criminal Procedure." *State v. Suarez*, 137 Ariz. 368, 380, 670 P.2d 1192, 1204 (1983). In his testimony before this Court, former PCPD Dardis confirmed that this was the unwritten "policy" concerning ineffectiveness

claims. The PCR court made the same observation, stating that "[a]n attorney who discovers a colorable claim of ineffective assistance of counsel must immediately withdraw, notify the Court that there is such a claim, and allow the Court to appoint an attorney who has no conflict in representing that client." (Dkt. 125.) Thus, it was counsel's duty to consider whether his client had a colorable ineffectiveness claim and, if so, to withdraw to permit appointment of non-conflicted counsel.

Given this duty, and the absence of any contrary evidence, the Court presumes that Fleischman did not identify any ineffectiveness by trial counsel Hippert. If he had, he would have sought to withdraw from the representation as required by both Arizona case law and his ethical obligations. Therefore, the Court finds that Petitioner's failure to properly exhaust a challenge to Hippert's performance at sentencing was not due to a conflict of interest arising from Fleischman's employment in the same public defender office but instead by Fleischman's failure to recognize a viable constitutional issue. However, "the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default." *Poland v. Stewart*, 169 F.3d 573, 587 (9th Cir. 1999) (citing *Murray*, 477 U.S. at 486).

During closing argument, Petitioner proffered a new cause argument. He asserted that Fleischman was blocked from discovering the factual basis of the sentencing ineffectiveness claim because the state court had denied counsel's post-conviction request for expert funding. This argument is waived because it could and should have been raised in reply to Respondents' assertion of procedural default fourteen years ago during the original briefing of Petitioner's claims. In any event, it lacks merit. First, Petitioner had no difficulty identifying and raising his sentencing ineffectiveness claim in his third PCR petition without the assistance of expert funding. Second, Fleischman's funding request related solely to the question of future dangerousness to counter the trial judge's finding at sentencing that Petitioner posed a danger to society. (Evid. Hr'g Ex. 42 at 12-13.) In addition, counsel in fact consulted with an expert, who reviewed materials from Petitioner's case and opined in

a lengthy letter to counsel that "there are enough mitigating circumstances to, at worst, give him a life sentence." (*Id.* at 22.) The record provided sufficient information from which Fleischman could have identified a claim concerning Hippert's representation at sentencing.

In sum, the Court finds that Petitioner has not established cause to excuse his failure to properly exhaust the sentencing ineffectiveness claim. Because Petitioner has not shown cause, the Court declines to reach the question of prejudice. *See Engle v. Isaac*, 456 U.S. 107, 134 n.43 (1982).

**IT IS SO ORDERED.**

**IT IS FURTHER ORDERED** that the Clerk of Court forward a copy of this Order to the Ninth Circuit Court of Appeals forthwith.

DATED this 11th day of May, 2010.

_____
John M. Roll
Chief United States District Judge